On June 17, 1997, a complaint seeking a temporary restraining order ("TRO") and permanent injunctive relief was filed on behalf of the city of Whitehall in the Environmental Division of the Franklin County Municipal Court. The city sought injunctive relief in order to abate the purported "public nuisance" created by the deteriorated condition of the real property, and structures built thereon, at 1058 Erickson Avenue. The city named the following as defendants in the nuisance action: Arturs Zageris, the titled owner of the property at the time the complaint was filed; Boatmen's National Mortgage, Inc., the first mortgage holder of the premises; and Ashworth Development Corporation, which alleged to have bought the property in a February 1997 sheriff's sale. The sheriff's sale resulted from a foreclosure action initiated by Boatmen's in September 1995 in the Franklin County Court of Common Pleas, and eventually ordered on November 6, 1996. The court confirmed the sale to Ashworth Development Corporation in March 1997. Additional details regarding the foreclosure litigation are discussed below.
When the nuisance complaint was filed in June of 1997, two significant affidavits were appended in support. Jerrold Roff, the Code Enforcement Officer for the city of Whitehall, stated that he inspected the exterior of the premises on June 12, 1997. He found the back yard "littered with building material, a shed that was turned over on its side full of junk and trash, and an overgrowth of weeds in and around abandoned dog kennels." He concluded that the "unsightly" premises were "in a far worse condition than on May 16, 1996[,]" when the property was previously declared uninhabitable. Richard Vargo, the Building Inspector for the city of Whitehall, also submitted an affidavit regarding his June 12, 1997 inspection of the property. Mr. Vargo holds a bachelor of science degree in mechanical engineering and is a retired structural design engineer with over thirty-five years' experience. He agreed with Mr. Roff's conclusions, opining that the condition of the premises had "substantially worsened to the extent that the structure above the garage door is sagging to the breaking point." He further stated that the brick facade wall on the garage had been "propped up as it is totally free of the structure [, and that] dry rot is spreading throughout the bulk of the structure." Finally, he observed that all of the exterior siding had been removed and "countless holes in the exterior sheathing allow the elements to invade the house interior."
The trial court issued a TRO on June 20, 1997. On August 4, 1997, the court held a hearing, at which time it was agreed that the TRO would continue in full force and effect until this appellate court ruled on Mr. Zageris's appeal relating to the foreclosure and sheriff's sale. In Boatmen's National Mortgage,Inc. v. Zageris (Dec. 11, 1997), Franklin App. No. 97APE04-503, unreported (1997 Opinions 5189), this court sua sponte
dismissed Mr. Zageris's second attempted appeal of the foreclosure and sheriff's sale. His first appeal had been dismissed on January 27, 1997 for his failure to file a brief as required by App.R. 11. The second attempted appeal was dismissed as untimely. Mr. Zageris purported to appeal from a March 1997 order of the trial court which, inter alia,
confirmed the February 14, 1997 sheriff's sale of the property to Ashworth Development Corporation. However, this court held that Mr. Zageris was actually attempting again to appeal the foreclosure order of November 6, 1996. On April 22, 1988, the Supreme Court of Ohio also sua sponte dismissed Mr. Zageris's attempted appeal. Boatmen's Natl. Mtge., Inc. v. Zageris
(1998), 81 Ohio St.3d 1511.
After Mr. Zageris unsuccessfully exhausted his appellate remedies regarding the foreclosure, the trial court in the nuisance case conducted an on-site hearing on July 16, 1998 at the subject property.
At the time of the hearing on the nuisance action, the trial court was aware that the order of sheriff's sale had been confirmed on appeal. However, the trial court took no admissible evidence on the issue of who held what interest in the real estate. In a somewhat rambling statement, Mr. Zageris observed:
 The reference in there is towards my property, as stated earlier in there. I want that on the record, what I stated earlier, in the essence that the Supreme Court of Ohio actually has held either Ashworth Development to be the owner — The deed's not transferred, I don't think in there for a very fair reason. And that will be subject to later —
THE COURT: Anything else?
MR. ZAGERIS: — judicial action.
THE COURT: Anything else? (Tr. 66-67.)
Mr. Zageris was not in a position to know whether or not the deed which constituted the last step in the transfer process had been filed, since he had no personal involvement in that process. No witnesses for the buyer at the sheriff's sale testified. Apparently, the trial court in the nuisance case proceeded with the hearing following a statement by the lawyer for the buyer at the sheriff's sale that finalization was awaiting an order from the appellate court "reinstating the case at the Common Pleas level." Both counsel for the buyer and the trial court in the nuisance case should have been on notice that when an appellate court dismisses an appeal or affirms a judgment, there is no order from the appellate court "reinstating the case" at the trial court level.
Despite the lack of clear evidence about who owned the property, the trial court in the nuisance action on July 21, 1998, journalized an entry granting the injunction sought by the city of Whitehall. Specifically, the trial court ordered the following relief to abate the public nuisance:
 1. By the 30th day after the journalization of this entry[,] defendant Zageris must remove all his personal property from the structure.
 2. By the 60th day after the journalization of this entry[,] defendant Zageris must file with the clerk of this court a structural engineer's report outlining what must be done to secure the structure's foundation from collapse. This report must show the official seal of the structural engineer. By the same date[,] a financial plan must be filed with the clerk of this court indicating what the costs of repairs will be, and how defendant Zageris will finance those costs.
 3. If defendant Zageris fails to file the structural engineer's report and the financial plan, plaintiff is authorized to abate the nuisance pursuant to a plan it devises. Before this plan is executed[,] it must be filed with the clerk of this court for this Court's review. If the Court agrees that the plan will abate the nuisance, plaintiff then may proceed to abate the nuisance. Any costs incurred by plaintiff in abating the nuisance shall be applied as a lien against the property.
Arturs Zageris (hereinafter "appellant") has appealed the findings and orders of the trial court, setting forth sixteen "assignment[s] of error":
 1. The Trial Court erred in saying that the said property continues to be in uninhabitable state on account of evidence of an overturned shed on the property's south side as well as some items strewn around the perimeter of the back yard. Request for order that the person who overturned the shed to remove or upright the shed.
 2. The Trial Court erred in saying that the said property continues to be in uninhabitable state on account of evidence of high grass and weeds. What evidence?
 3. The Trial Court erred in saying that the said property continues to be in uninhabitable state on account of causal relationship that the absence of gutters and downspouts cause water during rains to gather at the base of the house and seep into the basement walls and the basement for the causal relationship is questionable.
 4. The Trial Court erred in saying that the said property continues to be in uninhabitable state due to holes in north and south ends of the attic portion permitting wildlife to come and go into the attic. Order responsible parties to rectify the situation, Zageris not being a responsible party. Declare the City of Whitehall and the Trial Court to be abusive to Zageris in this matter of raccoons.
 5. The Trial Court erred in saying that the said property continues in an uninhabitable state or has declined since May 1996 due to no siding on west and north ends of property. Order responsible party Ashworth Development Company to rectify the situation.
 6. In the permanent injunction[,] the Trial Court falsely stated that the interior of said property has been without utilities over two years which condition City of Whitehall has stated as making the said property uninhabitable. Order all utility companies to state in writing when service to said property was cut off and by whom.
 7. The Trial Court and the City of Whitehall both overstated that the interior of said property is full of clutter and debris, neither stated that the interior has been ransacked even though both have heard about it before. The clutter or debris does not justify permanent injunction. Order the City of Whitehall Fire Department to release to Zageris their records of prior fire run to said property and the condition of interior at that time.
 8. The Trial Court has failed to explore and remedy the impact of the illegal actions of Ashworth Development Company, the failure of City of Whitehall to punish those all to the detriment of Zageris who is made to be a scapegoat for those failures to act properly.
 9. The City of Whitehall Attorney Charles Underwood has undertaken the action for political gain for himself and others in the City of Whitehall.
 10. The Trial Court is biased in favor of Department of Health rather than the truth.
 11. The Trial Court cuts off the proper reasoning of Defendant Zageris several times.
 12. The Trial Court permits to stand the improper reasoning of several witnesses.
 13. The Trial Court shifts blame for the conditions at said property to the Defendant Zageris from his own failure to reign [sic] in an abusive City of Whitehall which abused Zageris in order to retaliate for Zageris' exposing in court and in public its police officer Harlan Fisher as a giver of false testimony on purpose and so that its Mayor could through conspiracy eliminate — murder — the Zageris dogs which in fact occurred, for the second time the City of Whitehall violated O.R.C. Section 1717.13 for dishonest aims.
 14. Regarding the chief aspect of the permanent injunction — the decline of the property since May 1996 — and the chief witness, the so-called expert Richard Vargo — the Defendant Zageris knows that Richard Vargo on 5115-5119 of the transcript perjured himself. Request for dealing with this matter as outlined by Zageris.
 15. City of Whitehall expert Richard Vargo is not so expert and his lack of expertise should be recognized as City of Whitehall's further abuse of Zageris now and in 1996.
 16. On account of the preceding assignments of error the Defendant Zageris requests that the permanent injunction filed by the Trial Court be ruled out of order and that remedy to Zageris be given.
No responsive brief has been filed on behalf of any other party. Accordingly, we do not consider any remarks and/or "arguments" which exceed the scope of the record before us.
Given the state of the record before us, we cannot say that the trial court erred in issuing some sort of injunction as to personal property owned by Mr. Zageris. The trial court's factual determinations and resulting rulings as to personal property are supported by clear and convincing evidence.
However, we find that the trial court had insufficient evidence before it to allow it to issue the remaining injunctive relief outlined above. This finding is based upon our conclusion that the trial court did not have sufficient evidence before it to determine who was the owner of the real property at the time the trial court ordered the injunction.
Since the trial court could not clearly determine who owned the real property, the trial court could not issue a series of orders to Mr. Zageris which could only be satisfied by the titled owner of the real property.
We, therefore, partially sustain assignment of error No. 12 on the theory that some of the witnesses testified about holding Mr. Zageris responsible for property which the evidence did not establish was owned by him. We affirm the part of the trial court's judgment requiring Mr. Zageris to remove his property from the premises and the trial court's finding that the premises was a nuisance. We reverse the balance of the judgment and remand the case to the trial court to receive evidence on who legally owns the property at the present time and to conduct appropriate proceedings after that determination is made.
Assignment of error No. 12 is sustained in part and overruled in part. Therefore, the remaining assignments of error are overruled. The judgment of the trial court is affirmed in part and vacated in part. The cause is remanded for further appropriate proceedings.
Judgment affirmed in part and vacated in part, and causeremanded with instructions.
LAZARUS, P.J., and PETREE, J., concur.